## TONNIE MOORE V. THE STATE.

No. 19353. Delivered February 2, 1938.

The opinion states the case.

*O. F. Watkins* and *L. B. Aultman*, both of Mexia, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appel-

lant, with malice aforethought, killed Frank Bradfute by shooting him with a gun.

Appellant, who is a negro, worked in a hotel. The proprietor of the hotel owned a double-barrel 20 gauge shotgun, which appellant frequently used. Shortly after deceased had been killed and his wife seriously wounded two empty 20 gauge shotgun shells were found at the scene of the homicide. Deceased and his wife had been shot with a shotgun. M. T. Gonzaullas, Chief of the Bureau of Intelligence of Scientific Crime Detection of the Department of Public Safety of Texas, after qualifying as a ballistic expert, gave testimony in behalf of the State relative to his examination of the two empty 20 gauge shells which had been found near the scene of the homicide. Further, he testified concerning certain tests he had made with the shotgun owned by appellant's employer. His conclusion was that the shells found at the scene of the homicide had been fired by said gun.

Officers who went to the scene of the homicide testified to having observed a human track in a flower bed near the house. When appellant was arrested at the hotel in which he was employed the officers took his left shoe and placed it in said track. We quote from the testimony of one of the officers, as follows:

"I saw Tonnie Moore's shoe fitted into that track that we found under the window of the room in which Mr. and Mrs. Bradfute were sleeping that night, and the shoe fitted the track exactly. * * * The track we found in this flower bed was made by the left foot. The shoes you are now exhibiting to me are the shoes we took off of the defendant when he was arrested. This shoe (indicating) has some peculiar markings on it that would distinguish it from any other ordinary shoe. The peculiar markings of this shoe that I speak of is the way the heel is worn on one side and part of the sole is gone, worn out, and all of those things showed in the track just exactly as it is here. This flower bed had been watered and kept soft and this track was very plain. I am testifying about this left shoe. This window was at the head of the bed where Mr. and Mrs. Bradfute were sleeping."

After appellant was arrested the officers carried him to Waco, where he made a confession, which was properly reduced to writing. Omitting the formal parts, we quote from said confession as follows:

"My name is Tonnie Moore and I am 26 years old and I live at Thronton, Texas. I work for Mr. M. V. North at the hotel at Thronton. I have been working at this same hotel for

a little better than seven years. I worked there last Sunday from 5:30 in the morning until about 2 o'clock that evening. As long as I worked there I was free to come and go about the hotel both day and night but most usually they locked the back door at night but the hook on the back door had been broken for about two weeks. I mean by the hook being broke was that the screw that the hook fastened in had come out and it had never been put back in.

"Last Sunday there was three guns at the hotel. Two of them were 22 rifles and the other was a 20 gauge double-barrel hammerless shotgun. One of the 22 rifles had been at the hotel ever since I had been working there. It was a pump rifle. The other rifle had been there about a week or two and it was a single shot. The 20 gauge shotgun had been there ever since I had been working there too. There use to be a 16 gauge single-barrel gun there at the hotel but Corrie Campbell, a negro, just had the gun pawned there. It was taken up sometime last year. Lots of times Mr. M. V. North had this 20 gauge shotgun over to his house but the rest of the time it was at the hotel. I had borrowed this 20 gauge double barrel lots of times and went hunting. The last time I borrowed it Mr. Bud North and a negro by the name of Governor Brown went hunting. That was this last winter when the cold weather was on. Last Sunday I knew where this 20 gauge double-barrel shotgun was.

"I went up to the hotel about 3 o'clock last Sunday night and went in the place where this latch was broke on the back door and got the 20 gauge double-barrel shotgun that belonged to Mr. M. V. North. It was in the store room. Nobody knew that I got it. I then went out the same way I came in and then went on down the alley south from the hotel just a little piece and then I turned toward the railroad track and crossed it somewhere about the oil house and went on down by the Methodist church and went on up the street by Mr. Wallace's house and turned south around Mrs. Sweeney's house and when I got to Mrs. Ethel Barron's house I turned to the left and went on down the road to where it turned north to Mr. Frank Bradfute's house. I went down it to Mr. Bradfute's house. I went down there to Mr. Frank Bradfute's house to steal his money if he had any. When I first got to Mr. Bradfute's house I went on the south side of his house next to the window where they were sleeping. I listened at that window to see if I could hear them but I couldn't hear anything. I came on around and went on the front porch and then went on in the house. I had to open the screen door to get in. I didn't know where they were sleep-

ing until I got into the house. They were sleeping in the room that I went into. I listened after I went in and they were to my left after I got in the door. I could hear him breathing and I took a step or two toward the bed and I pointed the gun at his head and shot and then I backed up to the door that I came in at and then I shot at Mrs. Bradfute. I just shot twice. When I shot Mrs. Bradfute she was holloeing. She quit holloeing when I shot her. I didn't know for sure whether I had hit her. After I shot the second time I got scared and run off. The two shells that I had in the gun were the only two shells that I had. I got them upon the shelf in the store room of the hotel where I got the gun. I went out the same door to Mr. Bradfute's house that I went in at and when I got on the porch I unbreached the gun and sometime when the gun is unbreached it kicks out the shells and when I unbreached it one shell fell on the porch. I then jumped off the porch threw the other shell down somewhere in front of the house. I then went on back the same way that I had come and put the gun back in the same place that I got it and then went on home. My wife and her boy was asleep when I left home and also was asleep when I got back home after I had done the shooting of Mr. and Mrs. Bradfute. I went over to Mr. Bradfute's house for the purpose of stealing their money if they had any, but after I got there and shot Mr. and Mrs. Bradfute I got scared and left. That morning I went to work at the hotel as usual and had been working since until they arrested me today. I did not tell anybody of this until I made this statement."

Appellant did not testify, and the evidence presented no affirmative defense.

The proof on the part of the State that appellant's confession was voluntarily made after he had been properly warned, as required by Art. 727, C. C. P., was not controverted. In short, there was nothing in the testimony in any way tending to show that said confession had been improperly obtained by the officers. Nevertheless, the court charged the jury, in substance, that they could not consider the confession unless they believed beyond a reasonable doubt that same had been voluntarily made "without compulsion or persuasion or through fear." Appellant excepted to said charge on the ground that it was too restrictive, and in connection with his exception he sought to have the jury instructed that the confession could not be considered unless it had been freely and voluntarily made "without putting the defendant in fear of his life or bodily injury to himself in any manner or form whatsoever, or without having been actuated

and obtained through any threat whatsoever, or without any promise of reward whatsoever or without any persuasion or compulsion." In the absence of any testimony showing threats, promises of reward or persuasion, the court properly overruled the exception.

The evidence is deemed sufficient to support the conviction. The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.